UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
03-CV-6183(JMR/FLN)


Nonin Medical, Inc.                    )
                                       )
           v.                          )      ORDER
                                       )
Konica Minolta Photo Imaging           )
U.S.A., Inc., and Maxtec, Inc.         )


    Plaintiff claims patent infringement.  Defendants deny the
allegation and seek summary judgment.  Upon construing the patent,
the Court grants defendants' motion.

I.  Background[1]

    This is a pulse oximeter case.  Pulse oximeters measure light
passing through a person's finger, by which they calculate the
person's pulse and blood oxygen level.  Plaintiff has marketed its
oximeter since 1996.  The oximeter is protected by patent 5490523
("the '523 patent") granted in 1996, and a continuation patent,
5792052 ("the '052 patent"), granted in 1998.  Each patent includes
the same figures and specifications; they differ only in their
claims.

    Plaintiff's oximeter incorporates its electronic and sensory
apparatus into a single unit which clips onto the patient's finger.
This design eliminates the need to cable-connect its separate
electronic components.  The device works like an old-fashioned

_____

    [1]The facts are either undisputed or viewed in the light most
favorable to plaintiff.

clothes pin, with two opposing parts and a spring to maintain pressure between them.  It pivots to receive and grip a finger. One part of the device transmits light through the finger; the light beam is "read" by the apparatus in the other half.

Defendants introduced the accused device, the Pulsox-2, in 2003.  The Pulsox-2 also combines electronic and sensory apparatus in a self-contained unit, and it also has two portions:  an upper plastic cover with a soft plastic lining, and a lower grey plastic box.  Its cover and box spread apart to receive a finger.  The cover portion shelters a plastic arm, which holds light-emitting diodes ("LEDs").  The plastic arm extends from the box and does not pivot.  The LEDs in the arm transmit light through a small window in the cover.  The light passes through the subject's finger to sensors in the box.

Plaintiff claims the Pulsox-2 infringes Claims 1 through 3 of the '052 patent, and Claims 1, 2, and 5 of the '523 patent.  The '052 patent has been construed in a previous infringement action before the Honorable Joan Ericksen of this Court.  <u>See</u> <u>Nonin Medical, Inc. v. BCI, Inc.,</u> 2004 WL 442894 (D. Minn. 2004) (Ericksen, J.) (unpublished).  Judge Ericksen's construction will be discussed further below.

The disputed claims read as follows:

<u>The '052 Patent</u>

1.    Apparatus for measuring a blood oxygen saturation level of arterial blood inside a body portion,

2

comprising:

> gripping means for releasably gripping a finger, the gripping means comprising first and second housings interconnected by a pivot means which allows the first and second housings to pivot relative to one another to releasably grip a finger inserted between the first and second housings, the first and second housings being in electrical communication with each other;

> electronic means for sensing and determining the blood oxygen saturation level of the arterial blood inside the gripped body portion, the electronic means being completely carried by the gripping means.

2.   The apparatus of claim 1 further including a display means for displaying the sensed and determined blood oxygen saturation level, the display means being attached to the gripping means.

3.   The apparatus of claim 2 wherein the gripping means is comprised of finger gripping means for releasably gripping a finger, and wherein the electronic means is a pulse oximeter means for sensing and determining the blood oxygen saturation.

See Affidavit of Richard A. Arrett [Docket No. 30], Ex.

2, Col. 6:38-59.

The '523 Patent

1.   Apparatus for measuring the blood oxygen saturation of arterial blood inside a body portion, comprising:

> gripping means for releasably gripping a body portion, wherein the gripping means is comprised of finger gripping means for releasably gripping a finger;

> a pulse oximeter means for sensing and determining the blood oxygen saturation of the arterial blood inside the gripped body portion, the pulse oximeter means being completely carried by the gripping means;

3

a display means for displaying the sensed and
determined physical parameter, the display means
being attached to the gripping means;

power means for providing power to the pulse
oximeter means and the display means; and

program means operatively connected to the pulse
oximeter means and display means for sensing the
presence of a finger and switching the apparatus
from a low power state to a normal power state.

2.   The apparatus of claim 1 wherein the program
means senses the absence of a finger and switches the
apparatus from a normal power state to a low power state
to conserve power.

5.   The apparatus of claim 1 wherein the program
means switches the apparatus from a normal power state to
a low power state after a predetermined time interval to
conserve power.

See Affidavit of Richard A. Arrett [Docket No. 30], Ex.

1, Col. 6:34-58 and 64-67.

II.   Analysis

A.   Claim Construction and Summary Judgment

When considering a patent infringement claim, a court engages

in a two-step inquiry:  first, the meaning and scope of the patent

claims are construed, after which these claims are compared to the

accused device.  Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448,

1454 (Fed. Cir. 1998) (en banc).  Patent construction is a question

of law, while comparison to the accused device presents a question

of fact.  Ranbaxy Pharmaceutical, Inc. v. Apotex, 350 F.3d 1235,

1239-40 (Fed. Cir. 2003).  If the plaintiff cannot prove the

accused device employs all of the claim limitations, the accused

4

infringer is entitled to summary judgment.  See <u>Johnston v. IVAC</u> <u>Corp.</u>, 885 F.2d 1574, 1577-78 (Fed. Cir. 1989).

Summary judgment, on the issue of infringement, is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 246 (1986); <u>Omega Eng'g Inc. v.</u> <u>Raytek Corp.</u>, 334 F.3d 1314, 1320 (Fed. Cir. 2003).  The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial.  See <u>Anderson</u>, 477 U.S. at 248-49.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson</u>, 477 U.S. at 247-48.  If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  See <u>Celotex</u>, 477 U.S. at 322.

B.   <u>The Scope of the Patent Claims</u>

Plaintiff alleges infringement of independent and dependent claims of both patents.  A dependent claim incorporates each limitation of the independent claim upon which it rests.  Thus, if

an independent claim is not infringed, neither are its dependent claims. <u>See</u> <u>Wahpeton Canvas Co., Inc. v. Frontier, Inc.</u>, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

Here, Claim 1 of each patent is independent; the remaining claims are dependent upon Claim 1. The Court, accordingly, begins its analysis by considering disputed terms in Claim 1 of each patent.

The court "focuses at the outset on how the patentee used the claim term in the claims, specification, and prosecution history," which are the intrinsic evidence of record. <u>Phillips v. AWH Corp.</u>, ___ F.3d ___, 2005 WL 1620331, *14 (Fed. Cir., July 12, 2005) (en banc). Terms are presumed to carry "the meaning that the term would have to a person of ordinary skill in the art at the time of the invention." <u>Id.</u> at *5. The specification is the "single best guide to the meaning of a disputed term[,]" <u>id.</u> at *7 (citation omitted), and may reveal the inventor's intent to give a word a special definition, or to disavow part of the claim scope. <u>Id.</u> at *8. The court must guard against importing limitations from the specification into the claim. <u>Id.</u> at *15. Furthermore, the claims are to be construed without regard to the accused product. <u>See</u> <u>Jurgens v. McKasy</u>, 927 F.2d 1552, 1560 (Fed. Cir. 1991).

Under proper circumstances, a claim limitation "may be expressed as a means or a step for performing a specified function." Under such circumstances, the court construes it "to

cover the corresponding structure, material or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6 (2001). These are known as "means-plus-function" limitations. Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1371 (Fed. Cir. 2003). Whether a claim is, in fact, one of means-plus-function is a question of law. Id. at 1370. "A claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, ¶ 6 applies." Id. at 1371 (internal quotation omitted). The presumption may be rebutted by a showing that the claim term "recites no function corresponding to the means or recites sufficient structure or material for performing that function." Id. at 1372.

When construing a means-plus-function limitation, the court first "identif[ies] the function explicitly recited in the claim." It must then "identify the corresponding structure" which performs that function. Asyst Tech., Inc. v. Empak, Inc., 268 F.3d 1364, 1369 (Fed. Cir. 2001). The doctrine allows only the structure which performs the claimed function to be incorporated into the claim. Id. at 1369-70. The structure "must actually perform the recited function, not merely enable the pertinent structure to operate as intended." Id. at 1371.

In considering a means-plus-function claim, the court also considers material surrendered in the patent process. See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 733-34

(2002) ("Festo I") (prosecution history estoppel is a "rule of patent construction that ensures that claims are interpreted by reference to those that have been cancelled or rejected.") (internal quotations omitted). "Positions taken before the PTO may bar an inconsistent position on claim construction under § 112, ¶ 6." Cybor Corp., 138 F.3d at 1457. "The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." Id.

A patentee who narrows a claim to obtain a patent disavows patent protection for broader subject matter. See Festo I, 535 U.S. at 737. When an amendment or argument narrows a patent's scope, the patentee is estopped from claiming material relinquished in the amendment. Id.; see also Augustine Medical, Inc. v. Gaymar Indus., Inc., 181 F.3d 1291, 1298 (Fed. Cir. 1999). The patent holder bears the burden of showing the claim was narrowed for a reason other than patentability. Festo I, 535 U.S. at 740; Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Corp., 344 F.3d 1359, 1366 (Fed. Cir. 2003) ("Festo II"). Whether the patent holder has successfully rebutted the presumption of surrender is a question of law. Festo II, 344 F.3d at 1367.

With these principles in mind, the Court construes the claims.

    1.   The '052 Patent

Claim 1 of the '052 patent requires (a) "first and second housings," (b) in "electrical communication with each other," which

8

are (c) connected by a "pivot means." These words are interpreted in light of the intrinsic evidence of record, including the claims, the specification, and the prosecution history. Phillips, 2005 WL 1620331, at *14. The intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language." Teleflex, Inc. v. Ficosa North Am. Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002) (citation omitted). An inventor "may choose to be his own lexicographer if he defines the specific terms used to describe the invention with reasonable clarity, deliberateness, and precision." Id. (citation omitted). But in the absence of an "express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning." Id.

Judge Ericksen has previously construed the "first and second housings" term. She found it meant "two separate, rigid cases, each containing a mechanism or apparatus." BCI, 2004 WL 442894, *4. Neither party has addressed the preclusive effect, if any, of this earlier claim construction. While the question has not been conclusively determined, it appears plaintiff may be estopped from challenging Judge Ericksen's claim construction, because the

9

requirements for finality have been met.[2]   However, even absent estoppel, this Court finds Judge Ericksen's construction is a logical and reasonable interpretation of the claim.  As such, the Court adopts her interpretation.

The claim language calls out "first and second housings," which must be separate and distinct pieces.  Under Claim 1, these two housings must be "interconnected by a pivot means which allows the . . . housings to pivot relative to one another" to grip a finger.  Judge Ericksen defined "pivot means" as a means-plus-function in which "pivoting" was the function performed.  This Court agrees.  The means-plus-function presumption applies; the Claim uses "means," but recites no structure which performs the

---

[2]"[W]here a determination of the scope of patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims."  Pfaff v. Wells Electronics, Inc., 5 F.3d 514, 518 (Fed. Cir. 1993).  See also Dynacore Holdings Corp. v. U.S. Philips Corp., 243 F. Supp. 2d 31, 35 (S.D.N.Y. 2003) (applying collateral estoppel to claim construction); but see Kim v. The Earthgrains Co., 2005 WL 66071, *10-11 (N.D. Ill. 2005) (unpublished) (holding prior claim construction has no preclusive effect, and collecting cases demonstrating unsettled state of law).  Here, Judge Ericksen rendered a final judgment on the merits regarding infringement, and her construction of the claims was essential to that judgment.  A claim construction such as this, which satisfies the standard for judicial finality, may be accorded preclusive effect.  See RF Delaware, Inc. v. Pacific Keystone Tech., Inc., 326 F.3d 1255, 1261 (Fed. Cir. 2003) (holding that claim construction issued in interlocutory order was not sufficiently final to permit collateral estoppel); see also Rachel Clark Hughey, RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.:  The Federal Circuit Has Finally Spoken on Collateral Estoppel of Claim Interpretation, 20 Santa Clara Computer & High Tech. L. J. 293, 300 (2004).

pivoting function.   In application, of course, this is clearly a device which allows the two jaws of the device to grip a patient's finger.   In the context of the Claim, the term "pivot" appears to be a verb, but even if viewed as a noun, it would not indicate any structure sufficient to rebut the means-plus-function presumption.

To find Claim 1's actual structure performing the "pivot" function, the Court looks to the patent specification, which recites that the:

> [f]inger clip pulse oximeter takes the form of first and second housings 12 and 14, which are interconnected with spring 16.  Spring 16 has ends 18 and 19 which fit into two holes 20 and 21 on either side of the second housing 14.   Spring 16 is comprised of two generally U-shaped spring elements, which are themselves  connected in a side by side manner with a short spring element section 22, as is best seen in FIG. 7.  As can be seen best in FIGS. 1 and 4, spring element 22 fits into groove 24 of the bottom of the first housing.  Housing 12 has indents 26 and 28 which pivotally receive the tabs 30 and 32 of housing 14.  Spring 16 allows the two housings 12 and 14 to pivot and/or separate relative to one another.

Col. 3: 7-19.

Here, Judge Ericksen found the structures associated with the pivot function to be "tabs and indents of the two housings along with the U-shaped spring[,]" as disclosed in the specification. BCI, 2004 WL 442894, *5.  Again, this Court agrees, and notes that the specification carefully discloses Spring 16, comprised of three elements:  two U-shaped springs side by side linked by one "short spring element".  This structure and its equivalents are within the scope of the Claim.

11

Finally, the Claim requires the two housings to be in "electrical communication with each other." Judge Ericksen did not construe this term. This Court, however, affords it its plain and ordinary meaning. Giving the term this meaning, the Court finds the separate parts must be electrically configured in a fashion which permits a current or electronic data stream from the first to the second part.

2. The '523 Patent

The '523 patent has never been judicially construed. Claim 1 of the '523 patent discloses two elements: (a) a "finger gripping means" and (b) a "program means." The parties agree these terms are couched in means-plus-function terms, and that both the '052 and '523 patents have identical specifications. (Def. Mem. at 8, 10; Pl. Mem. at 27, 29.) It is axiomatic that means-plus-function claims derive their scope from the structure disclosed in the specification. Ballard Medical Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1360-61 (Fed. Cir. 2001). As each patent shares identical specifications, it is appropriate to construe their claims in pari materia. Id. at 1361.

The structure performing the finger gripping function in the '523 patent is identical to that performing the pivoting function in the "052 patent: "the tabs and indents of the two housings along with the U-shaped Spring 16." The grant of each patent means plaintiff is entitled to this structure, as well as any structures

12

performing the identical function in substantially the same way to reach the same result, provided these structures were not relinquished during the patent's prosecution.  See id. at 1359.

The "program means" limitation is also couched in means-plus-function language.  The claimed functions are "sensing the presence of a finger and switching the apparatus from a low power state to a normal power state."  The structure disclosed in the patent is "a computer program which monitors a sensor and switches the apparatus from a low power state to a normal power state."  The patent specification describes this program:

> Referring now to FIG. 18, the flowchart which monitors the photodiode and turns "on," wakes up or shifts the device from a low power mode to a normal operating power mode is shown.  Using this program and the apparatus, the inventive pulse oximeter eliminates the need for an "on" switch.

Col. 5:30-60.

Plaintiff asks the Court to find that this limitation describes a computer program which monitors the entire pulse oximeter.  The Court declines this invitation, because it is unsupported in either the Claim language or the specification.  To the contrary, the Claim and specification unambiguously state that the computer program "monitors" a "sensor" or a "photodiode," respectively.  Either described activity is consistent with the "sensing the presence of a finger" function, because a finger inserted in the device interrupts the light path between the LEDs and the sensor.

Accordingly, the Court rejects plaintiff's contention, and instead, construes "program means" to mean "a computer program which monitors a sensor or photodiode which senses the presence of a finger and switches the apparatus from a low power state to a normal power state."   This reading is consistent with the specification language stating the disclosed program "eliminates the need for an 'on' switch."   Accordingly, the patents particularly exclude a conventional switch which falls beyond the scope of this claim.

C.   <u>Does Defendants' Device Infringe?</u>

Plaintiff may prove infringement in either of two ways.  The first infringement is literal infringement, which requires plaintiff to prove each and every claim element is present in the accused device.  <u>Techsearch, L.L.C. v. Intel Corp.</u>, 286 F.3d 1360, 1371 (Fed Cir. 2002).  Any deviation precludes a finding of literal infringement.  <u>Telemac Cellular Corp v. Topp Telecom, Inc.</u>, 247 F.3d 1316, 1330 (Fed. Cir. 2001).

Alternatively, plaintiff may show infringement under the "doctrine of equivalents," by which an element of an accused device may be found equivalent to a claim limitation where both element and claim "perform[] substantially the same function in substantially the same way to obtain the same result[.]"  <u>Graver Tank & Mfg. Co. v. Linde Air Prods. Co.</u>, 339 U.S. 605, 608 (1950); <u>see</u> <u>also</u> <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S.

14

17, 40 (1997).  The Court recognizes that the doctrine of equivalents is not unlimited.  A plaintiff may not use the doctrine (1) to extend protection to a variant that was foreseeable when plaintiff applied for the patent, nor (2) to recover protection for a variant that was expressly surrendered.  Festo I, 535 U.S. at 724; Festo II, 344 F.3d at 1365.

The Court may determine, as a matter of law, whether prosecution history estoppel may be invoked to determine whether an equivalent was expressly surrendered.  See Warner-Jenkinson Co., 520 U.S. at 39, n.8.  In making this decision, the Court asks, first, whether the patentee's amendments or arguments narrowed the literal scope of the claim.  Festo II, 344 F.3d at 1366.  If so, the Court presumes the reason for the change was "a substantial one relating to patentability," id., unless the patentee is able to demonstrate otherwise.  The Court then presumes, subject to the patentee's rebuttal, that the patentee has surrendered "all territory between the original claim limitation and the amended claim limitation."  Id. at 1367.  If the patentee cannot rebut this presumption, "prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element." Id.  Rebuttal of the presumption of surrender is a question of law for the Court.  Id.  The test is "whether a competitor would reasonably conclude that an applicant's prosecution conduct had surrendered the disputed subject matter."  Augustine Medical, 181

F.3d at 1298.

Finally, "although equivalence is a factual matter normally reserved for a factfinder, the trial court should grant summary judgment in any case where no reasonable factfinder could find equivalence." Techsearch, L.L.C., 286 F.3d 1360, 1371 (Fed. Cir. 2002) (internal quotations omitted); Warner-Jenkinson Co., 520 U.S. at 39, n.8.  With these thoughts in mind, the Court turns to the claims, as construed above, and the accused device.

    1.  <u>The '052 Patent</u>

        a.  <u>The housings are not in electrical communication with each other</u>

There is no literal infringement.  The '052 patent claims two housings in "electrical communication with each other."  This limitation is not found in the Pulsox-2 housings.  In the accused device, the two housings are the upper blue plastic cover and the lower grey plastic box.  Electrical communication between these two is possible only if the plastic arm attached to the lower grey housing is considered to be contained within the upper blue housing.  This is a contorted construction.

Plaintiff urges the Court to adopt its theory that the upper blue housing "contains" the plastic arm, just as a warehouse containing a shoebox also "contains" the shoes in that box.  This argument stretches the patent's plain words beyond reason.  The proper question is not whether the plastic arm is part of the upper or lower housing, but whether it is part of one housing or both.

16

The blue plastic cover primarily screens out ambient light, allowing the LED sensors to function.  It has no sensors or electrical components connected to it, and is not physically connected to the sensory part of the arm.  Whether open or closed, the hollow cover simply surrounds – thus, according to the argument, it "contains" – the plastic arm in which the electrical elements reside.

This wordplay does not create a triable issue of fact on the question of whether the plastic arm has transfigured into a part of the upper housing.  In plaintiff's device, when the upper and lower housings are separated, the electrical communication stops, and the device cannot function; ergo, the upper housing is critical to the device's function.  Contrast this with the accused device:  If one removes the blue plastic Pulsox-2 cover, the electrical communication between box and arm is unaffected.[3]  The Court finds that no reasonable factfinder could find the Pulsox-2's arm to be part of the upper housing; therefore, the Pulsox-2 does not literally infringe the '052 patent.

Moreover, if a factfinder were to conclude the upper housing "contains" the LED arm which is affixed to the lower housing, that very determination would preclude infringement.  This is because

---

[3]Plaintiff's counsel suggested at oral argument that the ambient light might produce inaccurate readings, but agreed with the Court that a little opaque adhesive tape might solve this problem.

the LED arm does not pivot relative to the lower housing, as required by Claim 1 of plaintiff's patent.  By inference, the part of the upper housing that is "in electrical communication" does not pivot relative to the lower housing; therefore, the two housings do not pivot relative to each other.

Plaintiff has constructed its argument in a fashion which would require the Court to adopt multiple meanings of the word "contains" for different claims.  Absent any indication, either in the patent or its specifications, that such a definitional inconsistency was intended during the patent application, <u>see Ballard</u>, the Court declines plaintiff's invitation to do so here. Accordingly, there is no literal infringement.

Neither is the doctrine of equivalents available to plaintiff. In 1995, plaintiff deliberately narrowed the '052 patent by amending it to include the electrical communication requirement. This added limitation, emplaced by the applicant, bars plaintiff from claiming a device which lacks any electrical communication can infringe.  Moreover, a device without electrical communication was foreseeable at the time; plaintiff narrowed its patent to avoid conflicts with such devices.

Accordingly, the doctrine of equivalents is not available to plaintiff.

b.   <u>The "pivot means" does not infringe</u>

By the terms of the claims, plaintiff's "pivot means" is a

18

structure with "tabs and indents of the two housings along with the U-shaped Spring 16." Pulsox-2, to the contrary, simply employs two conventional torsion springs in place of the elaborately described Spring 16. As the structures are not identical, there is no literal infringement.

Again, any effort by plaintiff to resort to the doctrine of equivalents to find a structure equivalent to Spring 16 is unavailing. Torsion springs were well known in the art prior to 1995. Indeed, they were actually incorporated into a patent plaintiff carefully distinguished from its '052 patent application. At that time, plaintiff was explicit: it distinguished its Spring 16 from the prior art torsion springs, arguing that the prior art reflected "a completely different type of spring element" from Spring 16. (Amendment of January 13, 1995, at 8, attached as Ex. 10 to the Affidavit of Monte A. Mills ["Mills Aff. Ex. 10"].) Based upon plaintiff's own representations, a reasonable competitor would conclude plaintiff had surrendered the Pulsox-2's prior art torsion springs. Accordingly, it may not now claim that torsion springs are equivalent to Spring 16.

As plaintiff has failed to show a triable question of fact as to whether the Pulsox-2 infringes the '052 patent, summary judgment is appropriate.

    2.  The '523 Patent

The '523 patent requires a "program means . . . for sensing

19

the presence of a finger and switching the apparatus from a low power state to a normal power state." As discussed above, the "program means" involves computer software.

Certain aspects of the '523 patent are incorporated into the Pulsox-2 device. The accused device has computer software which activates the system, and, for purposes of this motion, the Court will assume an external program runs while the device is in a low-power state. That said, there is still no question of fact on the critical issue: the nature of the stimulus which prompts the computer program to activate the system.

Plaintiff's patent requires the "sensing of the presence of a finger and switching the apparatus from a low power state to a normal power state." Defendants have presented evidence that the Pulsox-2's activating stimulus is not "the presence of a finger," but rather the closing of a mechanical switch, an event which occurs whether or not there is the "presence of a finger" when the blue plastic cover is lifted. Plaintiff has entirely failed to show any necessity of "the presence of a finger" in the accused device. Accordingly, the Pulsox-2 lacks identical structure, and does not literally infringe the "program means" limitation.

Plaintiff is barred from claiming the Pulsox-2 has an equivalent structure because it has expressly disclaimed a mechanical "on" switch. The '523 patent specification explicitly recites the contrary: it states plaintiff's device "eliminates the

20

need for an 'on' switch." ('523 Pat., Col. 5:30-36, attached as Ex. 3 to the Affidavit of Monte A. Mills.)  During prosecution, plaintiff amended its claim to further distinguish a mechanical switch, noting that its invention required "structure which non-mechanically senses the presence of a finger and turns on.  For example, the 'program means' cannot be equated with the switch of O'Connor, which is physically engaged by the presence of a finger." (Mills Aff., Ex. 10, at 9.)  In contrast, the Pulsox-2 has no computer program that performs the function of sensing the presence of a finger.

Accordingly, there is no issue of fact on whether the Pulsox-2 infringes the '523 patent.  Summary judgment of noninfringement is appropriate.

III.   <u>Conclusion</u>

For the foregoing reasons, defendants' motion for claim construction and for summary judgment of noninfringement is granted.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August  5 , 2005

                                    s/ JAMES M. ROSENBAUM
                                    JAMES M. ROSENBAUM
                                    United States Chief District Judge